**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| **GOOGLE LLC,**<br><br>                **Plaintiff,**<br><br>        **v.**<br><br>**URBAN EXTREME, LLC D/B/A URBANX, MICHAEL GUTHRIE, AND DANIEL SHNADER,**<br><br>                **Defendants.** | **Case No.**<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**<br><br>**DEMAND FOR A JURY TRIAL**<br><br>**PERMANENT INJUNCTIVE RELIEF REQUESTED** |

Plaintiff Google LLC ("**Google**") brings this action to stop Urban Extreme, LLC, doing business as UrbanX ("**UrbanX**"), and its managers Messrs. Michael Guthrie and Daniel Shnader (collectively, "**Defendants**") from flooding the market with counterfeit mobile phone chargers and charging cables bearing Google's trademarks. Despite repeated demands from Google, Defendants have refused to cease their unlawful conduct.

Defendants brazenly display Google's trademarks in connection with counterfeit chargers and charging cables and sell them online. At times, Defendants have sold their products alongside listings for genuine Google products. The scheme is designed to deceive consumers into believing they are purchasing authentic Google charging accessories subject to Google's rigorous quality standards, when,

in reality, Google has no involvement with these products and no control over their quality.

Google now brings this action to protect consumers from Defendants' deception and to put an end to Defendants' misuse of Google's trademarks.

## PARTIES

1.     Google is a limited liability company organized under the laws of the state of Delaware with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California, 94043.

2.     On information and belief, Defendant Urban Extreme, LLC d/b/a UrbanX is a Florida limited liability company with a current principal place of business at 8720 Beach Blvd., Suite 4, Jacksonville, Florida 32216.

3.     On information and belief, Defendant Michael Guthrie is an individual who resides in Jacksonville, Florida.

4.     On information and belief, Defendant Daniel Shnader is an individual who resides in Delray Beach, Florida.

5.     As more fully detailed below, Mr. Shnader and Mr. Guthrie manage UrbanX together, and they control the wrongful conduct described herein.

## NATURE OF THIS ACTION

6.     This is an action for (1) trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1), including use of a counterfeit mark as

described by 15 U.S.C. §§ 1116(d), 1117(b)-(c); (2) unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) common law trademark infringement under Florida law; and (4) common law unfair competition under Florida law.

## JURISDICTION AND VENUE

7.    The Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), because this action arises under the laws of the United States—namely, the Lanham Act, 15 U.S.C. § 1051 *et seq*. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Google's state law claims, because such claims are factually interdependent with the federal law claims and arise from the same case or controversy.

8.    This Court has personal jurisdiction over UrbanX, because it is domiciled in this District through the operation of its principal place of business in Jacksonville, Florida. This Court has personal jurisdiction over Mr. Shnader and Mr. Guthrie because they operate UrbanX in this District, have continuous and systematic business contacts in this District, and have committed the acts of trademark infringement complained of herein in this District. Additionally, Mr. Guthrie resides in this District.

9.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1), because Defendants UrbanX and Mr. Guthrie are residents of this District within the

meaning of 28 U.S.C. § 1391(c)(1) and (c)(2), and Mr. Shnader resides in the State of Florida.

10.    Venue is also proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims herein occurred in this District.

11.    Filing in the Jacksonville Division of this Court is proper pursuant to Local Rule 1.04(b) because such division is most directly connected to the action: two Defendants are domiciled in Jacksonville, Florida and a substantial part of the events giving rise to the claims herein occurred in such city.

## GOOGLE & ITS PIXEL PRODUCTS

12.    Google is a well-known provider of search engine services, software, mobile devices, and various other products and services used widely by businesses and consumers.

13.    Initially famous for its search engine and other web and software services, Google is also widely recognized for its innovative hardware devices, including its phones sold under its registered PIXEL mark ("**Pixel phones**").

14.    Google began developing Pixel phones in 2015, with a vision of building a premium, durable smartphone based on its Android platform with top-of-the-line camera technology. Today, Pixel phones are in their tenth generation.

4

15.    Google supports Pixel phones with premium accessories like chargers and charging cables, among other things. Google uses its distinctive trademarks, including those described in the section below, to signify to consumers that they are purchasing authentic Google accessories. Consumers choose to buy authentic accessories because of Google's reputation for quality and reliability.

16.    Third parties may lawfully advertise accessories as compatible with Pixel devices, provided they do so in a manner consistent with principles of fair use and Google's trademark use policies. Only Google, or authorized distributors of genuine Google accessories, may lawfully brand such products in a way that suggests that they *come from* Google. Defendants are not authorized distributors; nor do they sell genuine Google products. This misconduct is what sets Defendants apart from other third-party sources of Pixel accessories.

17.    On information and belief, an appreciable number of consumers have purchased or are likely to purchase Pixel chargers and charging cables from Defendants under the mistaken belief that they are genuine Google products. In reality, and contrary to the expectations of such consumers, Google has no control over the quality of the products Defendants sell. Accordingly, any defects or other issues may be unfairly imputed to Google, harming Google's reputation and the goodwill in its involved trademarks.

**GOOGLE TRADEMARKS AT ISSUE**

18.    *The GOOGLE Mark*. Since its inception in 1998, Google has devoted substantial time, effort, and resources to the development and promotion of goods and services sold under its GOOGLE trademark. The GOOGLE mark has acquired significant recognition in the marketplace and has come to embody the substantial and valuable goodwill of Google.

19.    *The G Logo*. In addition to its famous GOOGLE mark, Google also uses a design mark (colloquially called a "logo") that consists of the letter "G" drawn in Google's proprietary logotype (the "**G Logo**"). Google has used the G Logo in commerce since at least as early as 2015 to represent and signify Google in space-constrained contexts. Due to more than a decade of use of the G Logo, consumers have come to recognize it as an abbreviated version of the GOOGLE mark.

20.    Google displays the G Logo in a distinct multi-color sequence of red, yellow, green, and blue in advertising, on product packaging, and elsewhere. In some contexts, the G Logo appears in solid colors, such as on certain Google devices. See below:

| Multi-color G Logo | Earbud with solid G Logo |
| --- | --- |
|  | |

21.  ***The PIXEL Mark***. Google has been using the PIXEL mark since at least as early as 2015 for mobile phones and other goods. Due to Google's long-standing use of the PIXEL mark and the growing popularity of Pixel phones, the PIXEL mark has become famous among relevant consumers as a symbol of Google's high-quality and innovative mobile products and accessories. Google uses the PIXEL mark both alone and in combination with other words or marks, including the G Logo.

22.  ***Google's Pleaded Registrations***. To protect its marks for its exclusive use and to put others on notice of its rights, Google has obtained several U.S. trademark registrations for the GOOGLE mark, G Logo, and PIXEL and PIXEL-formative marks.

23.  The table below shows Google's registrations pleaded in this action (the "**Pleaded Registrations**"). These cover, *inter alia*, the exact same goods that Defendants sell.

**Pleaded Registrations**

| Mark | Most Relevant Registered Goods (all in International Class 009) | Reg. No. Date of Registration |
|---|---|---|
| GOOGLE | ". . . chargers for . . . mobile phones . . . power cables; . . . electric charging cables for earphones, earbuds, headphones, and charging cases" | 6,373,292 June 1, 2021 |
| Google | ". . . battery chargers . . ." | 5,324,609 Oct. 31, 2017 |
| Google | ". . . battery chargers . . ." | 5,324,610 Oct. 31, 2017 |
| G | ". . . mobile phones . . . battery chargers . . ." | 5,520,292 July 17, 2018 |
| G | ". . . battery chargers . . . " | 5,365,541 Dec. 26, 2017 |
| G | ". . . mobile phones . . ." | 5,520,297 July 17, 2018 |
| PIXEL | ". . . smartphones; mobile phones; . . . battery chargers, electric charging cables . . .; computer peripherals, namely, . . . chargers, . . . and cables, all for use with computers, tablets, mobile phones, and smartphones" | 6,190,279 Nov. 3, 2020 |

| | | 5,091,394 |
|---|---|---|
| PIXEL | ". . . mobile phones" | Nov. 29, 2016 |
| G Pixel | ". . . computer peripherals, namely, . . . chargers . . . and cables" | 5,596,276 Oct. 30, 2018 |
| G Pixel | "Mobile phones; Smartphones" | 5,186,566 Apr. 18, 2017 |

24.    Nearly all of the foregoing registrations have achieved incontestability within the meaning of the Lanham Act, including: Reg. Nos. 5,324,609 and 5,324,610 for GOOGLE; Reg. Nos. 5,520,292, 5,520,297, and 5,365,541 for the G Logo; Reg. Nos. 5,091,394 and 6,190,279 for PIXEL; and Reg. Nos. 5,186,566 and 5,596,276 for G Logo & PIXEL.

## DEFENDANTS AND THEIR INFRINGING PRODUCTS

25.    Mr. Shnader incorporated UrbanX on or around September 21, 2015, according to Articles of Incorporation filed with the State of Florida.

26.    In or around March of 2024, Google learned that UrbanX was selling charging accessories for Pixel devices. Over the next several months, Google realized that UrbanX was not merely advertising such products as being compatible with Pixel, but was trying to pass them off as Google's own products. Google does not know when UrbanX first began selling such products.

9

27.    The products at issue were deemed counterfeit because of, among other reasons, product testing and improper packaging.

28.    UrbanX displays Google's trademarks in its online product descriptions, on product packaging, and on the products themselves, in each case, in ways that misleadingly suggest that such products are genuine Google products.

29.    Examples of advertising for such products are shown below.



10



11

https://www.amazon.com/30W-USB-C-Charger-Cable-Compatible/dp/B092G7ZVNW?ref_=ast_sto_dp                2026-02-17T22:27:10-05:00

**amazon**   Delivering to Nashville 37217   ⊙ Update location        Electronics ▾   Search Amazon   🔍        🇺🇸 EN ▾   Hello, sign in   Account & Lists ▾   Returns & Orders   🛒⁰ Cart

☰ All   Amazon Haul   Medical Care ▾   Amazon Basics   Best Sellers   Prime ▾   Books   Registry   Gift Cards ▾   Smart Home   New Releases   Today's Deals   Groceries ▾   Pharmacy

**Electronics**        New Arrivals   Deals   Cell Phones   Computers   TV & Video   Headphones   Office Electronics   Camera & Photo   Wearable Technology   Audio & Home Theater   Mus

New Year Home Refresh

Cell Phones & Accessories › Accessories › Chargers & Power Adapters › Wall Chargers

Click to see full view

### 30W USB-C Charger and Cable - Compatible with Google Pixel and Other USB-C Devices - Fast Charging Pixel Phone Charger - 3FT USB-C to USB C Cable & Clear Drop and Shock Proof TPU Case Included

Visit the UrbanX Store

$31⁷⁷

Get $60 off instantly: Pay $0.00 upon approval for the Amazon Store Card.

| | |
|---|---|
| **Brand** | UrbanX |
| **Connector Type** | USB |
| **Compatible Devices** | Google PIXEL 6/7/8 |
| **Compatible Phone Models** | Pixel |
| **Included Components** | 1 x 30W wall charger plug, 1 x 3FT / 1M type-C to type-C (USB-C) cord, 1 x Clear Drop And Shock Proof TPU Case for PIXEL 8 |
| **Special Feature** | UL Certified, Official Charger, Portable Travel Adapter, Super-Fast PD Charger |
| **Color** | White |
| **Input Voltage** | 240 Volts |
| **Total USB Ports** | 1 |
| **Wattage** | 30 |

∧ See less

### About this item

- Wide Compatibility: The PD USB-C charger kit is compatible with Google PIXEL 8 / 8 Pro, PIXEL 7 , PIXEL 6, Samsung Galaxy S22 S21 S20, S20 FE, Note 20, S8 Tab, Tablets and more. (PD Fast charger)
- USB Power Delivery: Next-generation, future-proof fast charging technology that will charge your google PIXEL phone 70% within one hour.
- Safety Assured: With advanced safeguards, ensuring protection against excessive current, overheating, and overcharging.
- Travel Friendly: The 3FT length of this USB-C to USB-C cable makes it easy to wrap up and store in a backpack or suitcase.
- Package Include: 1 x 30W wall charger plug , 1 x 3FT / 1M type-C to type-C (USB-C) cord, 1 x Clear Drop And Shock Proof TPU Case for PIXEL 8

🗐 Report an issue with this product or seller

### Check Compatibility
Choose your product

( Cellular Phone )   ( Headphones )   ( Tablet Computer )

### Competitively priced item

**Amazon's Choice**

Amazon Basics 36W Two-Port USB-C Wall Charger for Tablets and Phones with Power Delivery - White, 2.34 x 1.09 x 2.21 in (PD36U-2TNB)
★★★★½ (4546)
$17.09

---

$31⁷⁷

FREE delivery **Wednesday, February 25**. Details

⊙ Delivering to Nashville 37217 - Update location

**Only 10 left in stock - order soon.**

Quantity: 1 ▾

**Add to cart**

**Buy Now**

Shipper / Seller   UrbanX USA

Returns   30-day refund/replaceme nt

Payment   Secure transaction

**Add a Protection Plan:**
☐ 2-Year Protection Plan for $3.99
☐ 3-Year Protection Plan for $5.99
☐ Complete Protect: One plan covers all eligible past and future purchases for $16.99/month

Add to List

**Other sellers on Amazon**

New (3) from $31⁷⁷  & **FREE Shipping**   ❯

### Products related to this item  Sponsored ⓘ          Page 1 of 37

    

30.   In some instances, Google's trademarks appear directly on the devices themselves, such as this charger block shown in a product photo included in an UrbanX listing on Amazon:



31.   Not only do Defendants use Google's marks in an unauthorized and misleading manner, Defendants state that some charging accessories are "official" Google products – such as a charger on the UrbanX website touted as an "OFFICIAL GOOGLE FAST CHARGING CABLE" and an "Original by Google."



32.    As illustrated by such images,[1] Defendants use Google's identical marks, as well as a version of the G Logo that would be indistinguishable from the genuine mark to many consumers. The images are merely examples of Defendants'

---

[1] Red lines and highlighting in all images added for emphasis.

advertisements for their infringing and counterfeit goods, and not a full catalog of all current and past listings.

33.   Defendants have advertised and sold such counterfeit goods through third-party online retailers, such as Amazon and Walmart, as well as on Defendants' own websites:  urbanx.us, which is registered to Mr. Guthrie and is used as an online storefront for UrbanX; and karmasolutions.us, which is registered to Mr. Shnader and also displays UrbanX's products for sale.

34.   On information and belief, Defendants have advertised and sold, and continue to sell and advertise, such counterfeit and infringing goods within the State of Florida and throughout the United States.

**Defendants' Willful and Deliberate Infringement**

35.   Google attempted to stop Defendants' infringement.

36.   In or around April of 2025, Google filed takedown requests with Amazon to remove Defendants' infringing listings. This effort was successful for a short time, and many such listings were removed. But Defendants' listings, with their infringing use of Google's trademarks, reappeared. *See* example in paragraph 29 (captured on or around February 18, 2026).

37.   On or around May 12, 2025, Google sent a letter to UrbanX demanding that it cease infringing Google's trademarks. It did not respond. Google sent a

15

follow-up message to Mr. Guthrie's email address, which is also listed as UrbanX's email address on its website. Defendants also ignored that communication.

38.  To this day, Defendants continue to sell infringing and counterfeit charger cables and chargers.

39.  Defendants have sold such products through some of the same online channels through which genuine Google goods are sold, such as Amazon and Walmart, increasing the potential for confusion.

40.  Upon information and belief, Defendants have benefited from confusion in the marketplace, including by attracting customers who mistakenly believe that Defendants are selling genuine Google products.

41.  Defendants' egregious, bad faith intent to trade off consumer recognition of and goodwill in Google's trademarks is apparent from a recent trademark application they filed at the United States Patent and Trademark Office ("**USPTO**").

42.  On September 10, 2024, Defendants filed an application with the USPTO to register a blatant imitation of Google's G Logo, shown below:



16

43.    Mr. Guthrie filed the application in the name of UrbanX. The application covered "pet food," which UrbanX does not appear to sell, despite the fact that Mr. Guthrie filed it on the basis of current use of the mark in commerce.

44.    The USPTO refused registration on various grounds, and the application subsequently went abandoned on June 23, 2025. UrbanX's attempt to benefit from registering a mark that so clearly resembles Google's G Logo is further evidence of Defendants' scheme to misappropriate for themselves the reputation and consumer recognition Google has built up in such mark.

### Mr. Guthrie and Mr. Shnader Actively Caused the Misconduct

45.    Upon information and belief, and as detailed below, Mr. Guthrie and Mr. Shnader control and cause the misconduct carried out in the name of UrbanX described herein. At all times relevant to this complaint, the two have been the moving, conscious force behind UrbanX's activities, including its misuse of Google's trademarks.

46.    Mr. Shnader and Mr. Guthrie are both identified as managers of UrbanX in UrbanX's annual reports and other filings made with the Florida Secretary of State from 2023 through the most recent filing in April 2026. From late 2021 through 2022, Mr. Guthrie is identified as the manager, while Mr. Shnader is identified as a member. Mr. Shnader is listed as the owner and sole manager of UrbanX in its initial years after formation, from 2015 to 2019. No persons other

17

than Mr. Guthrie and Mr. Shnader have been identified as members, managers, or in any other supervisory or management role for UrbanX in any of its corporate filings.

47.   In corporate filings for UrbanX, the "principal place of business" provided for it was, for years, either Mr. Shnader's residence or Mr. Guthrie's residence. From 2015 through early 2019, UrbanX's identified principal place of business was Mr. Shnader's residential address, while from mid-2019 through 2023, it was Mr. Guthrie's.

48.   The listed principal place of business for UrbanX in 2024 and 2025 was an address that Mr. Shnader uses for another business that he owns, called Long Tail Tech, LLC. In April of 2026, the principal place of business was again identified as Mr. Guthrie's residential address.

49.   The domain urbanx.us is registered to Mr. Guthrie personally. The domain karmasolutions.us, which also advertises the counterfeit products at issue under the UrbanX name, is registered to Mr. Shnader personally.

50.   The contact number for UrbanX listed on its website (urbanx.us) is, on information and belief, Mr. Shnader's personal phone number.

51.   Mr. Guthrie identified himself as the "owner" of UrbanX in its infringing trademark application described above.

52.    Mr. Guthrie and Mr. Shnader are the only persons controlling, managing, or otherwise supervising UrbanX and are the moving, conscious force behind it and its misuse of Google's trademarks.

## COUNT 1 – FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114), INCLUDING COUNTERFEITING (15 U.S.C. §§ 1117(b)-(c)) (Against All Defendants)

53.    Google repeats and realleges each of the allegations contained in paragraphs 1-52 as if fully set forth herein.

54.    Google owns the Pleaded Registrations identified in paragraph 23, *supra*. All such registrations and marks are valid and subsisting.

55.    Each of the Pleaded Registrations issued on the USPTO's Principal Register without a claim of acquired distinctiveness, meaning each mark identified in the Pleaded Registrations is entitled to at least a presumption that it is inherently distinctive. Most such registrations are incontestable.

56.    As a result of Google's widespread and continuous use of the marks in the Pleaded Registrations throughout the United States, such marks have become well-known among relevant consumers and are closely associated with Google and its reputation for cutting-edge and reliable products—including but not limited to its Pixel phones and their accessories.

57.    Defendants have used the marks identified in the Pleaded Registrations (or variations that are substantially indistinguishable from such marks) in commerce

without the consent or authorization of Google. Defendants' use of such marks began years after such marks were already well-known signifiers of authentic Google products.

58.   Defendants use the marks in the Pleaded Registrations (or substantially indistinguishable variations thereof) in commerce on and in connection with charging devices for Pixel phones. Defendants use such marks on packaging, advertising, and at times on the products themselves. Google sells these same types of products, and uses such marks in virtually the same manner.

59.   Defendants' use of such marks was willful, made with full knowledge of Google's rights in and use of such marks, with the intent to cause consumer confusion as to the true source of Defendants' Pixel accessories and to trade on the goodwill in Google's marks.

60.   On information and belief, Defendants have caused actual confusion among consumers as to whether Defendants' accessories for Pixel phones are authentic Google accessories. Defendants have profited from and continue to profit from such confusion.

61.   Defendants' ongoing use of the marks in the Pleaded Registrations, or close variations thereof, as described herein, is likely to continue to cause confusion among relevant consumers.

62. Defendants' conduct constitutes infringement of each of the marks in the Pleaded Registrations under 15 U.S.C. § 1114, as well as "use of a counterfeit mark" within the meaning of 15 U.S.C. §§ 1117(b)-(c).

63. Google has been damaged, and unless enjoined by this Court, will continue to be damaged by the acts of infringement and counterfeiting complained of herein.

64. Google has no adequate remedy at law. The goodwill and reputation embodied by the marks in the Pleaded Registrations is of great value to Google, and such goodwill and reputation will suffer irreparable harm if Defendants' misconduct continues.

65. Google is entitled to the relief requested in its Prayer for Relief, below.

## COUNT 2 – FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a)) (Against All Defendants)

66. Google repeats and realleges each of the allegations contained in paragraphs 1-52 as if fully set forth herein.

67. Google owns the marks in the Pleaded Registrations identified in paragraph 23, *supra*. All such registrations and marks are valid and subsisting. Google uses all such marks in commerce in connection with mobile phones and accessories (including charging cables and chargers of various kinds), and accordingly owns common law rights in connection with all such goods. On

21

information and belief, Google's common law rights in each mark for each such good predate any use by Defendants by years.

68. Each of the marks identified in the Pleaded Registrations is inherently distinctive.

69. As a result of Google's widespread and continuous use of the marks in the Pleaded Registrations throughout the United States, such marks have become well-known among relevant consumers and are closely associated with Google and its reputation for cutting-edge and reliable products—including but not limited to its Pixel phones and their accessories.

70. Defendants have used the marks in the Pleaded Registrations (or variations that are substantially indistinguishable from such marks) in commerce without the consent or authorization of Google. Defendants' use of such marks began years after such marks were already well-known signifiers of authentic Google products.

71. Defendants use the marks in the Pleaded Registrations (or substantially indistinguishable variations thereof) in commerce on and in connection with charging devices for Pixel phones. Defendants use such marks on packaging, advertising, and at times on the products themselves. Google sells these same types of products, and uses such marks in virtually the same manner.

72.    Defendants' use of such marks was willful, made with full knowledge of Google's rights in and use of such marks, with the intent to cause consumer confusion as to the true source of Defendants' Pixel accessories and to trade on the goodwill in Google's marks.

73.    On information and belief, Defendants have caused actual confusion among relevant consumers as to whether Defendants' accessories for Pixel phones were authentic Google accessories. Defendants have profited from and continue to profit from such confusion.

74.    Defendants' ongoing use of the marks in the Pleaded Registrations, or close variations thereof, as described herein, is likely to continue to cause confusion among relevant consumers.

75.    Defendants use the marks in the Pleaded Registrations (or variations thereof) in a manner likely to cause confusion among relevant consumers constitutes unfair competition within the meaning of 15 U.S.C. § 1125(a)(1)(A).

76.    Google has been damaged, and unless enjoined by this Court, will continue to be damaged by the acts of unfair competition complained of herein.

77.    Google has no adequate remedy at law. The goodwill and reputation embodied by the marks in the Pleaded Registrations is of great value to Google, and such goodwill and reputation will suffer irreparable harm if Defendants' misconduct continues.

23

78. Google is entitled to the relief requested in its Prayer for Relief, below.

## COUNT 3 – FLORIDA COMMON LAW TRADEMARK INFRINGEMENT
### (Against All Defendants)

79. Google repeats and realleges each of the allegations contained in paragraphs 1-52 as if fully set forth herein.

80. Google owns the marks in the Pleaded Registrations identified in paragraph 23, *supra*. All such registrations and marks are valid and subsisting. Google uses all such marks in commerce in connection with mobile phones and accessories (including charging cables and chargers of various kinds), and accordingly owns common law rights in connection with all such goods. On information and belief, Google's common law rights in each mark for each such good predate any use by Defendants by years. Google owns the foregoing common law rights throughout the United States, including within the State of Florida.

81. Each of the marks in the Pleaded Registrations is inherently distinctive.

82. As a result of Google's widespread and continuous use of the marks in the Pleaded Registrations throughout the United States and in the State of Florida, such marks have become well-known among relevant consumers in this State and elsewhere. The marks are associated with Google and its reputation for innovative and reliable products – including but not limited to its Pixel phones and their accessories.

24

83. Defendants have used the marks in the Pleaded Registrations (or variations that are substantially indistinguishable from such marks) in commerce, including within this State, without the consent or authorization of Google. Defendants' use of such marks began years after such marks were already well-known signifiers of authentic Google products.

84. Defendants use the marks in the Pleaded Registrations (or substantially indistinguishable variations thereof) in commerce on and in connection with charging devices for Pixel phones. Defendants use such marks on packaging, advertising, and at times on the products themselves. Google sells these same types of products, and uses such marks in virtually the same manner.

85. Defendants' use of such marks was willful, made with full knowledge of Google's rights in and use of such marks, with the intent to cause consumer confusion as to the true source of Defendants' Pixel accessories and to trade on the goodwill in Google's marks.

86. On information and belief, Defendants have caused actual confusion among relevant consumers as to whether Defendants' accessories for Pixel phones were authentic Google accessories. Defendants have profited from and continue to profit from such confusion.

87. Defendants' ongoing use of the marks in the Pleaded Registrations, or close variations thereof, as described herein is likely to continue to cause confusion among relevant consumers, including consumers within this State.

88. Defendants' infringement of the marks in the Pleaded Registrations – including all registered and common law rights therein – constitutes trademark infringement in violation of the common law of the State of Florida.

89. Google has been damaged, and unless enjoined by this Court, will continue to be damaged by the acts of infringement complained of herein.

90. Google has no adequate remedy at law. The goodwill and reputation embodied by the marks in the Pleaded Registrations is of great value to Google, and such goodwill and reputation will suffer irreparable harm if Defendants' misconduct continues.

91. The acts of infringement described herein are willful and egregious, such that Google is entitled to punitive damages under Florida common law, as well as other relief requested in its Prayer for Relief, below.

## COUNT 4 – FLORIDA COMMON LAW UNFAIR COMPETITION
### (Against All Defendants)

92. Google repeats and realleges each of the allegations contained in paragraphs 1-52 as if fully set forth herein.

93. Google owns the marks in the Pleaded Registrations identified in paragraph 23, *supra*. All such registrations and marks are valid and subsisting.

Google uses all such marks in commerce in connection with mobile phones and accessories (including charging cables and chargers of various kinds), and accordingly owns common law rights in connection with all such goods. On information and belief, Google's common law rights in each mark for each such good predate any use by Defendants by years. Google owns the foregoing common law rights throughout the United States, including within the State of Florida.

94. Each of the marks in the Pleaded Registrations is inherently distinctive.

95. As a result of Google's widespread and continuous use of the marks in the Pleaded Registrations throughout the United States and in the State of Florida, such marks have become well-known among relevant consumers in this State and elsewhere. The marks are associated with Google and its reputation for innovative and reliable products – including but not limited to its Pixel phones and their accessories.

96. Defendants have used the marks in the Pleaded Registrations (or variations that are substantially indistinguishable from such marks) in commerce, including within this State, without the consent or authorization of Google. Defendants' use of such marks began years after such marks were already well-known signifiers of authentic Google products.

97. Defendants use the marks in the Pleaded Registrations (or substantially indistinguishable variations thereof) in commerce on and in connection with

charging devices for Pixel phones. Defendants use such marks on packaging, advertising, and at times on the products themselves. Google sells these same types of products, and uses such marks in virtually the same manner.

98.    Defendants' use of such marks was willful, made with full knowledge of Google's rights in and use of such marks, with the intent to deceive relevant consumers as to the true source of Defendants' Pixel accessories and to trade on the goodwill in Google's marks.

99.    On information and belief, Defendants have caused actual confusion among relevant consumers as to whether Defendants' accessories for Pixel phones were authentic Google accessories. Defendants have profited from and continue to profit from such confusion.

100.  Defendants' ongoing use of the marks in the Pleaded Registrations, or close variations thereof, as described herein is likely to continue to cause confusion among relevant consumers, including consumers within this State.

101.  Defendants' deceptive use of the marks in the Pleaded Registrations, and injury to the goodwill in such marks, constitutes unfair competition in violation of the common law of the State of Florida.

102.  Google has been damaged, and unless enjoined by this Court, will continue to be damaged by the acts of unfair competition complained of herein.

28

103. Google has no adequate remedy at law. The goodwill and reputation embodied by the marks in the Pleaded Registrations is of great value to Google, and such goodwill and reputation will suffer irreparable harm if Defendants' misconduct continues.

104. The acts of unfair competition described herein are willful and egregious, such that Google is entitled to punitive damages under Florida common law, as well as other relief requested in its Prayer for Relief, below.

## PRAYER FOR RELIEF

WHEREFORE, Google respectfully requests the following relief:

A.   That Defendants are adjudged to have violated 15 U.S.C. § 1114(1) by infringing the registered marks for GOOGLE, the G Logo, PIXEL, and G Logo & PIXEL in the Pleaded Registrations;

B.   That Defendants are adjudged to have used counterfeit marks that are identical to, or substantially indistinguishable from, the above-referenced registered marks within the meaning of 15 U.S.C. §§ 1116(d), 1117(b)-(c);

C.   That Defendants are adjudged to have violated 15 U.S.C. § 1125(a)(1) through their use of the marks pleaded herein, and variations thereof, in a manner likely to cause confusion;

D.   That Defendants are adjudged to have infringed Google's trademark rights in violation of Florida common law;

29

**E.**    That Defendants are adjudged to have committed unfair competition in violation of Florida common law;

**F.**    That Google be granted permanent injunctive relief under 15 U.S.C. § 1116, specifically, that Defendants and all officers, agents, servants, representatives, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest of any of them, and all other persons acting in concert or participation with any of them, be preliminarily and permanently enjoined from:

(i) using the GOOGLE mark, the G Logo, the PIXEL mark, or any other mark that includes any of the foregoing (collectively, the "**Prohibited Marks**"), as well as any variation of any Prohibited Mark, in the marketing, promotion, advertising, sale, or distribution of any products, except that Defendants may fairly describe non-counterfeit products as being "compatible with Pixel" or "compatible with Google Pixel" where appropriate and accurate provided Defendants do not use any stylization or design that Google uses for such marks;

(ii) using any of the Prohibited Marks or variations thereof in a manner that can or is likely to mislead relevant consumers to believe that any products distributed, sold, offered for sale, or advertised by any enjoined party are produced by, associated with, approved of, or sponsored by Google; or

(iii) engaging in any other infringing or misleading conduct discovered during

30

the course of this action;

**G.**     That Defendants destroy all goods, labels, signs, prints, packages, inventory, advertisements, internet advertising, other written or printed advertising, or promotional material in their possession or control that displays any Prohibited Mark or any variation thereof, excluding the nominative fair uses identified in F(i);

**H.**     That Defendants file, within ten (10) days from entry of an injunction, a declaration with this Court signed under penalty of perjury certifying the manner in which Defendants have complied with the terms of the above injunction and destruction order;

**I.**     That Google is awarded damages in an amount sufficient to compensate it for damage caused by Defendants' acts;

**J.**     That Google is entitled to an accounting of Defendants' profits pursuant to Defendants' unlawful activities, and an award of all such profits to Google;

**K.**     That Google is awarded three times Defendants' profits and three times Google's damages suffered from Defendants' willful, intentional, and deliberate acts of infringement and unfair competition in violation of the Lanham Act;

**L.**     That Google is entitled to three times Google's damages or, if so elected by Google, statutory damages, from each use of a counterfeit mark by Defendants in violation of the Lanham Act;

**M.**     That Google is awarded punitive damages pursuant to Florida common

law;

**N.**    That Google is awarded pre-judgment and post-judgment interest;

**O.**    That Google is awarded its reasonable attorneys' fees and costs; and

**P.**    That Google is awarded such other relief as the Court shall deem appropriate.

## JURY DEMAND

Google requests a trial by jury on all issues so triable by right.

Dated: July 9, 2026                  Respectfully submitted,

/s/ Leslie J. Lott

Leslie J. Lott (Local Counsel)
Florida Bar No. 182196
ljlott@lottfischer.com
Ury Fischer
Florida Bar No. 48534
ufischer@lottfischer.com
**Lott & Fischer, PL**
255 Aragon Avenue, Third Floor
Coral Gables, FL 33134
Tel. (305) 448-7089


Brendan J. Hughes* (Lead Counsel)
bhughes@cooley.com
Rebecca Givner-Forbes*
rgf@cooley.com
Jessica Williams*
jwilliams@cooley.com
Cole A. Poppell*
cpoppell@cooley.com
**COOLEY LLP**
1299 Pennsylvania Ave. NW, Suite 700
Washington D.C. 20004
Tel. (202) 842-7800

*Applications for special admission
forthcoming*

*Attorneys for Plaintiff Google LLC*